## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> OHIO SKILL GAMES INCORPORATED, <br><br> Debtor(s). | In Proceedings Under Chapter 11 <br><br> CASE NO. 08-60560 <br><br> ADV. NO. 08-6049 |
| OHIO SKILL GAMES INCORPORATED, <br><br> Plaintiff(s), <br><br> v. <br><br> PACE-O-MATIC, INC., <br><br> Defendant(s). | JUDGE RUSS KENDIG <br><br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF PACE-O-MATIC, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pace-O-Matic, Inc. ("POM"), by and through its undersigned counsel hereby submits this Memorandum of Law in support of Pace-O-Matic, Inc.'s Motion for Partial Summary Judgment (the "Motion for Summary Judgment") against Ohio Skill Games Incorporated (the "Debtor"), the plaintiff in this adversary proceeding and debtor in the above-captioned bankruptcy case, and states as follows:

### I.     Jurisdiction and Venue

1.     On March 1, 2008 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Ohio (the "Court").

2.     This Court has jurisdiction to consider POM's Motion for Summary Judgment pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

{00453377.DOC;1 }

3. The statutory predicates for the relief sought herein are Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056.

## II. Preliminary Statement and Summary of Argument

4. POM seeks summary judgment because the License Agreement (defined below) terminated on October 25, 2007 according to its own terms as to the State of Ohio due to a change in law, which made the games illegal.

5. The License Agreement's terms provide for its automatic termination in each state in which a change in state law prohibits the use of a Covered Game (defined below). In October 2007, the Ohio Legislature passed a bill that changed the definition of a skill-based amusement machine, which bill was signed into law and became effective on October 25, 2007. That statutory change made it illegal to continue to operate the Covered Games in Ohio and due to that statutory change, the License Agreement automatically terminated on October 25, 2007 with respect to the State of Ohio. Accordingly, because as a matter of law the License Agreement automatically terminated with respect to Ohio on October 25, 2007, POM is entitled to summary judgment.

## III. Statement of Material Facts

6. POM develops and manufacturers skill-based amusement games that utilize POM's proprietary software (the "Covered Games"). (Declaration of Michael R. Pace in Support of the Memorandum of Law in Support of Pace-O-Matic, Inc.'s Motion for Partial Summary Judgment (the "Declaration of Michael R. Pace") ¶ 2; License Agreement, Recital ¶ A.)

7. A Covered Game consists of a cabinet (which includes a power supply, printer, bill acceptor and monitor), a computer board, and software. (Declaration of Michael R. Pace ¶ 3; License Agreement § 3.1.)

8. Prior to October 25, 2007, Debtor was engaged in the distribution of amusement games and similar products. (Declaration of Michael R. Pace ¶ 4; License Agreement, Recital ¶ B.)

9. On April 29, 2007, Debtor and POM entered into that certain Amended and Restated Master Software License and Distribution Agreement (the "License Agreement"), pursuant to which Debtor agreed to certain performance obligations for the distribution of Covered Games within the states of Ohio, Massachusetts, Michigan and Hawaii. (Declaration of Michael R. Pace ¶ 5.) A true and correct copy of the License Agreement is attached hereto as Exhibit A.

10. The Covered Games operated through two means: (i) proprietary software developed by POM (the "Software") and (ii) an electronic "Fill System," which is a proprietary revenue generation refill system designed by POM that permits Operators (as defined in the License Agreement) to access additional plays or continued use on each Covered Game on a per play or other fee basis. (Declaration of Michael R. Pace ¶ 6.)

11. Prior to October 25, 2007, the Debtor purchased Covered Games from POM, placed those games with Operators, sold Refills (as defined in the License Agreement) to Operators, and collected the revenues generated from the sale of Refills. (Declaration of Michael R. Pace ¶ 7.)

12. The Operators would place the Covered Games into locations where end users could access and play the games. (Declaration of Michael R. Pace ¶ 8.)

13. Section 2915.02 of the Ohio Revised Code prohibits certain types of gambling, including "schemes of chance," and criminal penalties such as fines and incarceration can be imposed for violations of the gambling laws. A true and correct copy of Section 2915.02 of the Ohio Revised Code is attached hereto as Exhibit B.

14. Pursuant to Ohio Revised Code Section 2915.01(C), the term "scheme of chance" includes "a slot machine, lottery, numbers games, pool conducted for profit, or other scheme in which a participant gives a valuable consideration for a chance to win a prize, but does not include bingo, a skilled-based amusement machine, or a pool not conducted for profit." A true and correct copy of Section 2915.01(C) of the Ohio Revised Code is attached hereto as Exhibit C.

15. The Covered Games that were in use in Ohio prior to October 25, 2007 were skill-based amusement machines that awarded redeemable vouchers for cash prizes. The cash prizes from a single play could exceed the sum of ten dollars as the result of a single play of a machine. Courts held that the operation of the Covered Games in Ohio prior to October 25, 2007 was legal. (Declaration of Michael R. Pace ¶ 9.)

16. In October 2007, the Ohio Legislature passed a bill ("HB 177") amending the definition of a "skill-based amusement machine" contained in Section 2915.01(AAA) of the Ohio Revised Code. The amendment excluded from the definition of "skill-based amusement machine" any device that awards cash. The amendment also excluded from the definition of "skill-based amusement machine" any device that awards merchandise or redeemable vouchers as the result of a single play of a machine that has a wholesale value exceeding ten dollars. A true and correct copy of HB 177 is attached hereto as Exhibit D.

17. On October 25, 2007, HB 177 was signed into law by the Governor of Ohio. A true and correct copy of the Ohio Secretary of State's Journal of the 127th General Assembly 2007-2008, which evidences HB 177's effective date (File No. 27), is attached hereto as Exhibit E.

18. The Covered Games that were in use in Ohio prior to October 25, 2007 could not be played after that date because, among other reasons, they awarded cash prizes and because they awarded redeemable vouchers that, as the result of a single play of a machine, had a wholesale value that exceeded ten dollars. (Declaration of Michael R. Pace ¶ 9.)

19. Section 5.2 of the License Agreement provides that:

> This Agreement shall be deemed partially terminated with respect to any State in the Exclusive Territory into which Distributor has sold Covered Games to the extent a statutory change or judicial interpretation hereafter prohibits the use of any Covered Game or skill-based amusement device generally in such State and as provided in Section 2.1 above.

(Declaration of Michael R. Pace ¶ 10.)

20. The License Agreement was terminated as to operations in the State of Ohio upon the enactment of HB 177. (Declaration of Michael R. Pace ¶ 11.)

21. The Covered Games existing in Ohio as of October 25, 2007 were turned off and their operations were discontinued. (Declaration of Michael R. Pace ¶ 12.)

### IV. Standards for Summary Judgment

22. Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56 govern motions for summary judgment in adversary proceedings in the United States Bankruptcy Courts. In pertinent part, Rule 56(c) provides that:

> "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

{00453377.DOC;1 } 5

08-06049-rk    Doc 48    FILED 12/19/08    ENTERED 12/19/08 16:12:51    Page 5 of 12

Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Davison v. Roadway Exp., Inc.*, 2008 WL 2522340 *3 (N.D. Ohio June 26, 2008). A court may render summary judgment upon the whole case or only on a portion thereof under Fed. R. Civ. P. 56(d).

23. The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist and that judgment should be granted in its favor as a matter of law. Celotex, 477 U.S. at 322-23; *Davison v. Roadway Exp., Inc.*, 2008 WL 2522340 *3 (N.D. Ohio June 26, 2008). The movant must inform the court of the basis for its motion and identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. There is no genuine issue for trial only if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita*, 475 U.S. at 585-87; *Liberty Lobby, Inc.*, 477 U.S. at 249-50.

24. While inferences drawn from the underlying facts will be viewed in a light most favorable to the non-moving party, *Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 586, the existence of a material factual dispute is sufficient to prevent summary judgment only if the disputed fact is determinative of the outcome under the applicable law. *Anderson*, 477 U.S. at 248.

25. If the moving party has presented evidence in support of his motion, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Hence, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

## V. Argument

26. Ohio prohibits certain types of gambling, including "schemes of chance," and criminal penalties such as fines and incarceration can be imposed for violations of the gambling laws. Section 2915.02 of the Ohio Revised Code, provides, in pertinent part:

> (A) No person shall do any of the following:
> . . .
> (2) Establish, promote, or operate or knowingly engage in conduct that facilitates any game of chance conducted for profit or any scheme of chance;
> (3) Knowingly procure, transmit, exchange, or engage in conduct that facilitates the procurement, transmission, or exchange of information for use in establishing odds or determining winners in connection with bookmaking or with any game of chance conducted for profit or any scheme of chance;
> (4) Engage in betting or in playing any scheme or game of chance as a substantial source of income or livelihood;
> . . .
> (B) . . . For Purposes of division (A)(2) of this section, a person facilitates a game of chance conducted for profit or a scheme of chance if the person in any way knowingly aids in the conduct or operation of any such game or scheme, including, without limitation, playing any such game or scheme.
> (C) This section does not prohibit conduct in connection gambling expressly permitted by law.
> . . .
> (F) Whoever violates this section is guilty of gambling, a misdemeanor of the first degree. If the offender previously has been convicted of any gambling offense, gambling is a felony of the fifth degree.

Ohio Rev. Code § 2915.02.

27. For purposes of Ohio Revised Code Section 2915.02, the term "scheme of chance" includes "a slot machine, lottery, numbers games, pool conducted for profit, or other scheme in which a participant gives a valuable consideration for a chance to win a prize, but does not include bingo, a skilled-based amusement machine, or a pool not conducted for profit." Ohio Rev. Code § 2915.01(C); s*ee* Ohio Rev. Code § 2915.01(VV)(2) ("'slot machine' does not include a skill-based amusement machine").

28. Prior to the enactment of HB 177, former Ohio Rev. Code § 2915.01(AAA) defined "skill-based amusement machine," in pertinent part, as follows:

> (1) "Skill-based amusement machine" means a skill-based amusement device, such as a mechanical, electronic, video, or digital device, or machine, whether or not the skill-based amusement machine requires payment for use through a coin or bill validator or other payment of consideration or value to participate in the machine's offering or to activate the machine, provided that all of the following apply:
>
> (a) The machine involves a task, game, play, contest, competition, or tournament in which the player actively participates in the task, game, play, contest, competition, or tournament.
>
> (b) The outcome of an individual's play and participation is not determined largely or wholly by chance.
>
> (c) The outcome of play during a game is not controlled by a person not actively participating in the game.
>
> (2) All of the following apply to any machine that is operated as described in division (AAA)(1) of this section:
>
> (a) As used in this section, "task," "game," and "play" mean one event from the initial activation of the machine until the results of play are determined without payment of additional consideration. An individual utilizing a machine that involves a single task, game, play, contest, competition, or tournament may be awarded prizes based on the results of play.
>
> (b) Advance play for a single task, game, play, contest, competition, or tournament participation may be purchased. The cost of the contest, competition, or tournament participation may be greater than a single non-contest, competition, or tournament play.
>
> (c) To the extent that the machine is used in a contest, competition, or tournament, that contest, competition, or tournament has a defined starting and ending date and is open to participants in competition for scoring and ranking results toward the awarding of prizes that are stated prior to the start of the contest, competition, or tournament.

Former Ohio Rev. Code § 2915.01(AAA).

29. POM manufactured a skill-based amusement game known as Tic Tac Fruit that was sold into Ohio prior to October 25, 2007. The Tic Tac Fruit games awarded the successful player redeemable vouchers for cash prizes that, in some instances, would exceed the sum of ten

dollars as the result of a single play of a machine. Under the definition of "skill-based amusement machine" existing prior to the enactment of HB 177, the Covered Games sold into Ohio, the Tic Tac Fruit games, were legal as the outcome of an individual's play was not determined largely or wholly by chance, and the prizes awarded by the games were not limited by statute.

30. However, due to the change in law as a result of the enactment of HB 177, the Tic Tac Fruit games that were sold into Ohio no longer met the definition of a skill-based amusement machine because, among other reasons, they awarded redeemable vouchers for cash prizes that, in some instances, would exceed the sum of ten dollars as the result of a single play of a machine, thereby becoming "schemes of chance" that were expressly illegal to use under Section 2915.02 of the Ohio Revised Code. As amended, Ohio Rev. Code § 2915.01(AAA) now defines a "skill-based amusement machine" as follows:

> (1) "Skill-based amusement machine" means a mechanical, video, digital, or electronic device that rewards the player or players, if at all, only with merchandise prizes or with redeemable vouchers redeemable only for merchandise prizes, provided that with respect to rewards for playing the game all of the following apply:
>
> (a) The wholesale value of a merchandise prize awarded as a result of the single play of a machine does not exceed ten dollars;
>
> (b) Redeemable vouchers awarded for any single play of a machine are not redeemable for a merchandise prize with a wholesale value of more than ten dollars;
>
> (c) Redeemable vouchers are not redeemable for a merchandise prize that has a wholesale value of more than ten dollars times the fewest number of single plays necessary to accrue the redeemable vouchers required to obtain that prize; and
>
> (d) Any redeemable vouchers or merchandise prizes are distributed at the site of the skill-based amusement machine at the time of play.
>
> (2) A device shall not be considered a skill-based amusement machine and shall be considered a slot machine if it pays cash or one or more of the following apply:

(a) The ability of a player to succeed at the game is impacted by the number or ratio of prior wins to prior losses of players playing the game.

(b) Any reward of redeemable vouchers is not based solely on the player achieving the object of the game or the players score;

(c) The outcome of the game, or the value of the redeemable voucher or merchandise prize awarded for winning the game, can be controlled by a source other than any player playing the game.

(d) The success of any player is or may be determined by a chance event that cannot be altered by player actions.

(e) The ability of any player to succeed at the game is determined by game features not visible or known to the player.

(f) The ability of the player to succeed at the game is impacted by the exercise of a skill that no reasonable player could exercise.

(3) All of the following apply to any machine that is operated as described in division (AAA)(1) of this section:

(a) As used in this section, "game" and "play" mean one event from the initial activation of the machine until the results of play are determined without payment of additional consideration. An individual utilizing a machine that involves a single game, play, contest, competition, or tournament may be awarded redeemable vouchers or merchandise prizes based on the results of play.

(b) Advance play for a single game, play, contest, competition, or tournament participation may be purchased. The cost of the contest, competition, or tournament participation may be greater than a single noncontest, competition, or tournament play.

(c) To the extent that the machine is used in a contest, competition, or tournament, that contest, competition, or tournament has a defined starting and ending date and is open to participants in competition for scoring and ranking results toward the awarding of redeemable vouchers or merchandise prizes that are stated prior to the start of the contest, competition, or tournament.

(4) For purposes of division (AAA)(1) of this section, the mere presence of a device, such as a pin-setting, ball-releasing, or scoring mechanism, that does not contribute to or affect the outcome of the play of the game does not make the device a skill-based amusement machine.

Ohio Rev. Code § 2915.01(AAA). HB 177 thus amended the definition of a "skill-based amusement machine" to, among other things, limit such machines to awarding a "merchandise prize" (or a voucher redeemable for a merchandise prize) with a value of no more than $10, and

to define a device that awards cash prizes as a slot machine. Ohio Rev. Code § 2915.01(AAA). A "merchandise prize" is defined to expressly *exclude* cash prizes, Ohio Rev. Code § 2915.01(BBB)(1), and a slot machine is an illegal scheme of chance, Ohio Rev. Code § 2915.01(C). As the Covered Games that were sold into Ohio prior to October 25, 2007 awarded redeemable vouchers for cash prizes that, in some instances, would exceed the sum of ten dollars as the result of a single play of a machine, such Covered Games became illegal as of October 25, 2007 upon the enactment of HB 177.

Section 5.2 of the License Agreement provides that:

> This Agreement shall be deemed partially terminated with respect to any State in the Exclusive Territory into which Distributor has sold Covered Games to the extent a statutory change or judicial interpretation hereafter prohibits the use of any Covered Game or skill-based amusement device generally in such State and as provided in Section 2.1 above.

As discussed above, the enactment of HB 177 prohibited the use of the Covered Games in Ohio. Therefore, pursuant to the terms of Section 5.2 of the License Agreement, the License Agreement automatically terminated as to Ohio on October 25, 2007.

*[Remainder of page intentionally left blank]*

## Conclusion

WHEREFORE, POM respectfully requests that the Court enter an order granting it partial summary judgment on the single issue of whether the Licensing Agreement terminated on or about October 25, 2007 as to the State of Ohio, and ordering such further relief as is just and proper.

Dated: December 19, 2008

Respectfully submitted,

/s/ Ronald M. McMillan

| | |
|---|---|
| JEFFREY L. TARKENTON<br>(admitted *pro hac vice*)<br>LOUIS J. ROULEAU<br>(admitted *pro hac vice*)<br>TODD D. ROSS<br>(admitted *pro hac vice*)<br>WOMBLE CARLYLE SANDRIDGE & RICE, PLLC<br>1401 Eye Street, N.W., 7th Floor<br>Washington, D.C. 20005<br>Telephone: (202) 857-4450<br>Facsimile: (202) 261-0050<br><br>Co-Counsel for Defendant Pace-O-Matic, Inc. | JEAN R. ROBERTSON (0069252)<br>MARK I. WALLACH (0010948)<br>RONALD M. MCMILLAN (0072437)<br>CALFEE, HALTER & GRISWOLD LLP<br>1400 KeyBank Center<br>800 Superior Avenue<br>Cleveland, Ohio 44114<br>Telephone: (216) 622-8200<br>Facsimile: (216) 241-0816<br>jrobertson@calfee.com<br>mwallach@calfee.com<br>rmcmillan@calfee.com<br><br>Co-Counsel for Defendant Pace-O-Matic, Inc. |